RESOLUCIÓN
Recientemente se aprobó la Ley Núm. 78-2011, según enmendada, para autorizar, disponer y reglamentar todo lo relacionado con el sistema electoral de Puerto Rico, adop-tar el Código Electoral de Puerto Rico para el Siglo XXI (Código Electoral) y, entre otras cosas, derogar la Ley Núm. 4 de 20 de diciembre de 1977, según enmendada, denominada Ley Electoral de Puerto Rico, 16 L.P.R.A. sec. 3001 et seq.
Entre las disposiciones que se incluyen en este nuevo ordenamiento electoral se encuentran las dirigidas a modi-ficar la forma y manera en que se asignan los jueces y las juezas que participan de los procesos electorales en el país. Al respecto, los Arts. 3.008, 4.005 y 5.002 del nuevo Código Electoral requieren que los jueces y las juezas que vayan a trabajar en asuntos relacionados con una posible destitu-ción del Presidente, Alterno al Presidente o Vicepresiden-tes de la Comisión Estatal de Elecciones (Art. 3.008), en las acciones y los procedimientos judiciales, civiles o penales que dispone y reglamenta este nuevo Código (Art. 4.005) o que vayan a fungir como Presidentes o Presidentes Alter- *370 nos de las Comisiones Locales de Elecciones (Art. 5.002), sean seleccionados mediante un método aleatorio determi-nado por este Tribunal para desempeñar dichas tareas.
Para poder cumplir adecuadamente con esta exigencia de ley, encomendamos al Dr. Rubén Vélez García, perito en estadísticas y psicómetra de la Junta Examinadora de As-pirantes al Ejercicio de la Abogacía y la Notaría por los pasados quince años, que realizara un estudio sobre este particular y nos preparara una propuesta que atendiese todo lo relacionado con el referido proceso de asignación de jueces y juezas, conforme las disposiciones de la citada legislación. Cumpliendo con lo encomendado, el pasado martes 3 de enero de 2012, el doctor Vélez García nos rea-lizó la presentación de rigor en una Sesión Especial del Pleno de este Tribunal.
Evaluada la presentación y las sugerencias del doctor Vélez García, y para cumplir con lo dispuesto en los Arts. 3.008, 4.005 y 5.002 del nuevo Código Electoral, este Tribunal acuerda seleccionar todos los jueces y las juezas que participarán de los procesos electorales en el país mediante el método aleatorio conocido como Selección Aleatoria Simple con Reposición (SASR). Dicho método es el más común-mente utilizado, el más sencillo y la base para los demás métodos de muestreo probabilístico. Este es el método que se utiliza en la mayoría de los casos, tales como las loterías (tradicional o electrónica), los bingos y las rifas por tómbo-las (aunque en estos dos últimos se utiliza sin reposición). También es similar al que se utiliza para las selecciones aleatorias en los contextos académicos y de investigación científica.
Este método cumple con los dos objetivos fundamenta-les de la aleatoriedad: (1) llevar a cabo una selección sin que exista ningún sesgo previo a esta y (2) que cuando se realicen múltiples selecciones consecutivas, los elementos que componen el conjunto de donde se hace la selección tengan igual probabilidad de ser seleccionados.
*371 Según los estudiosos de este tema, tradicionalmente las técnicas para la aplicación del método SASR han sido ma-nuales, como las tómbolas, las cajas o bolsas opacas y las tablas de números aleatorios para los contextos académi-cos y científicos. Con el advenimiento y accesibilidad de la tecnología, algunas de estas técnicas migraron hacia los formatos electrónicos.
Así, pues, el método que hoy aprobamos contempla uti-lizar una técnica similar conocida como la “función aleato-ria” existente en los lenguajes de programación. El uso de esta técnica incorpora las ventajas que ofrecen todas las demás alternativas (control de los sesgos de preselección mediante la “selección a ciegas”), selección aleatoria simple con reposición, así como una gran facilidad y sencillez de implantación con un mínimo de adiestramiento. Además, introduce y ofrece seguridad y confiabilidad, la mayor sal-vaguarda contra uno de los riesgos de otras técnicas. La “función aleatoria” estará integrada en una aplicación que debe diseñarse para atender los tres escenarios que dis-pone el Código Electoral en sus Arts. 3.008, 4.005 y 5.002, supra.
Establecido lo anterior, este Tribunal ha determinado que el procedimiento general para la implantación del mé-todo SASR en cada escenario será el siguiente:
• Seleccionar el escenario para el cual se desea hacer la selección de acuerdo con los Arts.3.008, 4.005 y 5.002;
• identificar las condiciones y circunstancias que apli-can al escenario en particular;
• determinar cuántos jueces o cuántas juezas es nece-sario seleccionar;
• tomando en cuenta dichas condiciones y circunstan-cias, generar el conjunto de jueces y juezas hábiles para ocupar las posiciones requeridas;
• invocar el procedimiento SASR consecutivamente cuantas veces sea necesario, ignorando las selecciones que se repitan, sin que ello impida que un juez o una jueza *372 pueda ser seleccionado o seleccionada en más de un esce-nario, conforme a los Arts. 3.008, 4.005 y 5.002, y repi-tiendo el procedimiento hasta que se completen todas las selecciones necesarias, y
• cambiar de escenario y repetir el procedimiento.
De igual forma, y para cumplir con las disposiciones del Código Electoral a la que hemos hecho referencia, inicial-mente deberá utilizarse un modelo de “aleatoriedad abso-luta”; es decir, que todas las posiciones relacionadas con la asignación de jueces y juezas a los procesos electorales se considerarán vacantes y se reasignarán utilizando el mé-todo aquí propuesto, de manera que todas las posiciones quedarán con asignaciones seleccionadas aleatoriamente. En lo sucesivo, se utilizará un modelo de “aleatoriedad por demanda”, seleccionando periódicamente jueces y juezas para las vacantes que surjan mediante el método aquí propuesto.
Por último, es menester señalar que para garantizar la suficiencia y la eficiencia en las asignaciones, en la medida en que sea posible, deberán aplicarse los principios si-guientes:
• Se asignarán jueces o juezas municipales primero, y luego jueces o juezas superiores de la propia Región Judicial;
• en Regiones Judiciales con más precintos que jueces o juezas, se considerarán jueces y juezas de otras regiones circundantes;
• los jueces administradores y subadministradores, y las juezas administradoras y subadministradoras de los Centro Judiciales no se considerarán para las asignacio-nes;
• los únicos jueces o las únicas juezas que no partici-parán de este proceso serán aquellos jueces o aquellas jue-zas que sufran de alguna indisponibilidad temporera (en-fermedad incapacitante y maternidad).
*373 Así las cosas, se ordena a la Directora de la Oficina de Administración de los Tribunales que, una vez reciba la notificación de esta Resolución, tome a la brevedad posible las medidas correspondientes para implantar el método aleatorio aquí dispuesto para la selección de los jueces y las juezas que vayan a trabajar en asuntos relacionados con una posible destitución del Presidente, Alterno al Presi-dente y Vicepresidentes de la Comisión Estatal de Eleccio-nes que dispone el Art. 3.008; en las acciones y los proce-dimientos judiciales, civiles o penales que dispone y reglamenta el Art. 4.005, o aquellos que vayan a fungir como Presidentes o Presidentas de las Comisiones Locales según lo dispuesto en el Art. 5.002 del Código Electoral. La Directora de la Oficina de Administración de los Tribuna-les deberá tomar las medidas correspondientes para que se haga una grabación visual de los procedimientos aquí se-ñalados, que estará disponible para las personas interesadas. Se dispone, además, que la Directora de la Oficina de Administración de los Tribunales notificará, con no menos de cuarenta y ocho horas previas a cada procedi-miento, al Presidente de la Comisión Estatal de Elecciones y a los Comisionados o a las Comisionadas Electorales, a fin de que puedan designar observadores durante cada pro-ceso de selección. Realizadas las referidas selecciones, un notario o una notaría levantará un Acta, la cual la Direc-tora de la Oficina de Administración de los Tribunales de-berá notificar, en un término de veinticuatro horas, a la Secretaria de este Alto Foro, al Presidente y a los Comisio-nados o las Comisionadas Electorales de la Comisión Esta-tal de Elecciones.
A su vez, la Directora de la Oficina de Administración de los Tribunales deberá notificar por escrito a cada uno de los Jueces y las Juezas de este Tribunal el resultado de las referidas selecciones. Esta notificación deberá realizarse en cada ocasión que se realice una selección aleatoria de jueces o juezas.

*374
Publíquese.

Lo acordó y manda el Tribunal y lo certifica la Secreta-ria del Tribunal Supremo. La Juez Asociada Señora Rodrí-guez Rodríguez emitió un voto particular disidente.
(Fdo.) Aida Ileana Oquendo Graulau

Secretaria del Tribunal Supremo

Voto particular disidente emitido por la Juez Asociada Se-ñora Rodríguez Rodríguez.
Como yo fundamentalmente no soy más que palabra, el no hablar es morir y francamente, a morir no es-toy dispuesto.

Miguel de Unamuno

(1)

Nuevamente no puedo permanecer silente ante una ac-tuación que considero golpea la Constitución de Puerto Rico. Por estimar que la disposición del nuevo Código Electoral en torno a que el “Tribunal Supremo, mediante Reso-lución, determinará el método aleatorio a utilizarse para la selección de jueces”(2) constituye una irrupción indebida en las facultades constitucionales del Juez Presidente, me veo en la obligación de disentir. En estas circunstancias, más que una obligación, disentir deviene en un deber.
La Resolución que hoy se aprueba, como exigencia del nuevo Código Electoral, me obliga a una reflexión y consi-deración pausada y concienzuda sobre disposiciones de nuestra Ley Suprema en torno a las funciones y prerroga-tivas del Juez Presidente como administrador de la Rama *375 Judicial. Si analizamos detenidamente el Artículo V, Sec-ción 7 de nuestra Constitución, así como la intención que de allí surge y que se discutió durante las sesiones de la Convención Constituyente y, además, ha permeado a lo largo de seis décadas en nuestra jurisdicción, es forzoso concluir que el Artículo 4.005 de la Ley Núm. 78 es inconstitucional.
La Constitución de Puerto Rico establece claramente: “El Juez Presidente dirigirá la administración de los tribunales ...” (Énfasis suplido.) Art. V, Sec. 7, Const. E.L.A., L.P.R.A., Tomo 1, ed. 2008, pág. 416. En los debates de la Convención Constituyente se propuso incluso eliminar la función del Juez Presidente como administrador de los tribunales de justicia, pero tal enmienda propuesta fue derrotada. 1 Diario de Sesiones de la Convención Constitu-yente 616-618 (1961). Por lo tanto, los delegados de la Convención Constituyente quisieron y reafirmaron que la administración de los tribunales recaiga sólo en la figura del Juez Presidente.
Más aún, en torno a un debate sobre el nombramiento del director administrativo de los tribunales de justicia, el delegado Sr. Ramos Antonini hizo hincapié en que el pro-pósito de la Sección 7 del Artículo V es que el Juez Presi-dente asuma exclusivamente la administración de los tribunales.(3) Comenta el delegado Ramos Antonini que con el proceder de la Convención Constituyente se busca proteger al Juez Presidente “en el desempeño de su respon-sabilidad y descargue de su autoridad para que pueda cumplir con la encomienda de la constitución que le dice que él dirigirá la administración [de los tribunales]”. Dia-rio de Sesiones, supra, pág. 1667.
Según el debate y desarrollo intelectual que surge del *376 Diario de Sesiones de la Convención Constituyente, es cla-ramente palpable la intención de proteger la figura del Juez Presidente como único administrador de los tribuna-les de justicia. Así, ante varios intentos de enmiendas para restringir las funciones administrativas del Juez Presi-dente, los delegados de la Convención Constituyente se opusieron tenazmente a cualquier limitación a la enco-mienda y responsabilidad del Juez Presidente de dirigir y administrar libremente y según su propio criterio las fae-nas de la Rama Judicial. Véase Id., págs. 1666-1670.
Ahora bien, el análisis jurídico que nos lleva a concluir que la exigencia del nuevo Código Electoral que se recoge en la Resolución aprobada hoy es inconstitucional no ter-mina ahí. Todo lo contrario; es menester que identifique-mos cuáles son esas facultades y prerrogativas que la Constitución asignó al Juez Presidente. Para ello es de harta utilidad que recurramos a textos coetáneos a la Constitución y que abordan sobre ella. Así podremos tener una visión más completa de la intención tras la disposición constitucional en cuestión. Con este proceder coincidimos con la teoría de Juan Vallet de Goytisolo, al efecto de que
El jurista, al aplicar el Derecho, se halla ... en una situación absolutamente análoga a la del historiador. ... Debe compren-der una acción humana pasada y, por eso, le hace falta repro-ducir en su propio pensamiento el del legislador o del juez. Este será el primer paso de su busca, reconstruir la imagen que el autor de la regla tenía de la situación social que reguló. J. Vallet de Goytisolo, Panorama del Derecho Civil, 2da ed., Barcelona, Ed. Bosch, 1973, pág. 84.
La examinación de esos textos coetáneos a la Constitu-ción, además de otros documentos y leyes más recientes pero con la misma filosofía de fondo, nos llevan a concluir que esa visión sobre la función del Juez Presidente no fue estática, sino que nuestro ordenamiento jurídico siempre ha reconocido como parte de nuestro sistema constitucio-nal que las prerrogativas del Juez Presidente como eje ad- *377 ministrador de la Rama Judicial son las que hoy defende-mos, contrario a lo que se dispone en la Resolución aquí adoptada. Veamos.
La figura del Juez Presidente como administrador de los tribunales de justicia incluye, entre otras, la de asignar los jueces que atenderán los casos según su mejor entendi-miento. En otras palabras, es prerrogativa de ese cargo escoger a los jueces que van a trabajar en particulares asuntos o casos. Esa fue la intención de los redactores de la Constitución, como se ejemplifica a continuación:
Section 7 specifies that ... [t]he Chief Justice is placed in charge of the administration of the courts and is given the power to appoint an administrative director to serve at his pleasure.
Administration of the courts was understood by the Convention to mean not only performance of the routine housekeeping functions but also conduct of the judicial business of the courts. The most important aspect of the latter is the assignment of judges and cases in order to relieve congested dockets, distribute work equitably among the judges, and prevent delays costly to litigants. (Énfasis suplido y escolio omitido.) Notes and Comments on the Constitution of the Commonwealth of Puerto Rico, Washington, D.C., [s. Ed.], 1952, pág. 92 (es meritorio destacar que quien escribió el prefacio de esas notas y comentarios fue el Dr. Antonio Femós Isem, pre-sidente de la Convención Constituyente).
Esa intención de que sea el Juez Presidente quien asigne a los jueces que atenderán los asuntos en todos los tribunales de justicia se recogió incluso en el Artículo 2.012 de la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003, Ley Núm. 201 de 22 de agosto de 2003, 4 L.P.R.A. sec. 24j. Prescribe dicho artículo:
El Juez Presidente del Tribunal Supremo dirigirá la admi-nistración del Tribunal General de Justicia, será responsable del funcionamiento eficiente de los tribunales, promoverá la responsabilidad de los jueces en la ejecución de sus obligacio-nes judiciales y velará por el cumplimiento de los principios y objetivos de [esta Ley].
*378 A tenor con lo dispuesto por la Constitución del Estado Libre Asociado de Puerto Rico respecto a un sistema judicial unifi-cado, el Juez Presidente asignará a los jueces para celebrar sesiones en el Tribunal de Primera Instancia, asignará los jue-ces a los diversos paneles del Tribunal de Apelaciones .... (En-fasis suplido.)
Bien es cierto que en nuestro sistema de derecho una ley posterior puede derogar una ley anterior tácitamente cuando la posterior contenga disposiciones contrarias o irreconciliables con la primera. Art. 5 del Código Civil de Puerto Rico, 31 L.P.R.A. see. 5. Véase, además, L. Muñiz Argüelles y M. Fraticelli Torres, La investigación jurídica en el derecho puertorriqueño: fuentes puertorriqueñas, nor-teamericanas y españolas, 4ta ed., 2006, págs. 283-284. No obstante, es inaudito que una ley posterior derogue una ley anterior que claramente se fundamenta en una disposición constitucional. Tal proceder equivaldría a una derogación tácita de un mandato constitucional por fíat legislativo. Eso sería impermisible. Lamentablemente, con la Resolu-ción que hoy se adopta, se valida lo inaudito, lo impermi-sible, lo antijurídico, lo inconstitucional.
En fin, la Ley Núm. 78 dispone que será el Pleno del Tribunal Supremo, no el Juez Presidente, quien determine el método aleatorio de selección de jueces que atenderán los asuntos relacionados con el proceso electoral del País. Esa disposición estatutaria es inconstitucional porque irrumpe en las funciones constitucionales provistas al Juez Presidente. Es lamentable que se valide dicho estatuto en un intento inconstitucional de absorber mayores esferas de poder no delegado en el ánimo de establecer un estado acé-falo de administración de la Rama Judicial.

 Miguel de Unamuno, 18 de noviembre de 1917, Casa Museo Miguel de Una-muno, Salamanca, España.

 Código Electoral de Puerto Rico para el Siglo XXI, Art. 4.005 de la Ley Núm. 78 de 1 de junio de 2011, según enmendada (Ley Núm. 78).

 “El propósito de este artículo es el de que la responsabilidad de la adminis-tración de los tribunales de justicia recaiga en el presidente del Tribunal Supremo 1 Diario de Sesiones de la Convención Constituyente 1667 (1961).